The next case this morning is 523-0340, People v. Schmidt. Arguing for the appellant is Omar Jalil. Arguing for the appellee is Trent Marshall. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning, your honor. Appellant, if you are ready to proceed, you may do so. Thank you. Mr. Marshall, honorable justices, may it please the court. My name is Omar Jalil and I represent Jerome Schmidt who is seeking reversal of his felony murder conviction. The state here failed to prove Mr. Schmidt guilty beyond a reasonable doubt of felony murder because Mr. Brown's actions of using unjustifiable deadly force to prevent Blayton from escaping was an intervening cause between the burglary and the felony murder. The types of cases where felony murder has been found all involve fact patterns where the defendant introduces violence and then that violence is reasonably resisted by the victim. Here, the actions of Mr. Brown were not reasonable. It was unjustified for him to fire his weapon at Blayton. When Mr. Brown arrived into the garage, he locked the door, he readied his weapon to fire, and he made demands on Mr. Schmidt and his half-brother. Mr. Schmidt didn't attempt to rob him, he didn't threaten him, he didn't resist his demands, and he never displayed a weapon. Instead, what Mr. Schmidt tried to do was beg for his life. He begged Mr. Brown not to shoot and he tried to make up a sympathetic story to justify why they were in the garage. To that, Mr. Brown responded by swearing at them, pointing a loaded gun at them, ordering them to get on their knees and to put their hands in the air. Wasn't the defendant actually armed at that time or don't you call it armed if he's got it? Didn't he have a gun underneath his one arm when he's hiding the gun? He was, your honor, but I think the big distinction...  He was armed, but the victim didn't know this and that's the big difference between this case and the other felony murder cases that have been cited by both by the state and myself. Mr. Schmidt never displayed that weapon to him. Mr. Brown didn't know that Mr. Schmidt was armed and the fact that Mr. Schmidt hid that weapon leads to the conclusion that it wasn't his intention to use that weapon. When Mr. Brown came into the garage... Why didn't he put it down on the ground? He had it where he could use it. Well, what his testimony was that he was under the assumption that the police were entering the garage and not Mr. Brown and that his concern was that if... Go back to the initial question. He intended to use it if he had to. I would say not, your honor. I would say... He unloaded it and set it on the ground. Pardon me? He unloaded it and set it on the ground because he didn't want to use it. I give up. No, your honor. He didn't. He didn't put it on the ground. I think the situation was that if he would have displayed the weapon and tried to put it on the ground, I think Mr. Brown would have done what he did to Blayton. I think in that split-second decision, what Jerome decided to do was to hide the gun and... That he wasn't going to use it. Pardon me, your honor? Where did he hide it? He wanted to keep it so he might use it. Well, I think he's hiding it so he doesn't get shot. And the first reaction is that the door opens. He's hiding it thinking it's the police. And if it was a situation where he intended to use it, he wouldn't have hit it. He would have brought it out and pointed it at the persons or people that were entering that garage. And the fact that he didn't do that, I think is indicative of what is that he didn't want to do that. And the evidence in this case was that he had given up, Blayton had given up. Even the juvenile testified, they told me to come out, that we were caught, it was over. And he then comes out with his hands in the air. This fact, these fact patterns are just completely different from the situations where the defendants are threatening the victim. The defendants are displaying weapons at the victim, where the victim, the defendant is making demands of the victim. Here, that's a completely opposite situation. The victim here is the one that's displaying the weapon. The victim is the one that is yelling at the defendant. The victim is the one that's making demands of the victims, and the victims are complying with these demands. I wouldn't the defendant put his gun down on the floor? Well, again, I think it comes down to the situation of what was going through his mind when that door opened. Even if it was the police, the first thing you do is put your gun down. I mean, ideally, I think he could have put his gun down, but I think the decision he did was to hide the weapon. If his intention was to use the weapon, he wouldn't have hit it. And again, he also- But he didn't surrender it either. He didn't surrender it. You're absolutely correct. He didn't surrender it. Let me ask you a question, just generally. Do you believe that the notice of appeal has to indicate that this is in a sufficiency of the evidence? Do you believe that it has to indicate the date of the order you're appealing from? And the reason I ask is the notice of appeal in this case only says that the sentencing order is being appealed from. It doesn't mention the February order. The post-trial motion was denied in February, and it's not identified as the order being appealed from in this case. What's your thoughts on that? Your Honor, I would need to look at that, but I would state that the notice of appeal is a jurisdictional step and that the purpose of it is to transfer jurisdiction from the trial court to this honorable court. And that if there was an error such as that, it would be a scrivener's error. And the intent of the defendant that he was challenging both the finding of guilty and his sentence should be presumed by this court. Okay. Thank you. And in regards to our Mr. Schmitt's second ineffective assistance argument, trial counsel was ineffective for raising defenses that were just unavailable in a felony murder case. Self-defense is not available for a defendant in charge with a felony murder case. Felony murder, as is a second-degree murder instruction. And by trial counsel raising defenses that were unavailable to him denied Mr. Schmitt his reasonable assistance of counsel. And with that, I would, if there's any other further questions that the court has. Any further questions, Justice Gates? Justice Welch? Not at this time. All right. Thank you, counsel. Appellate, or appellate, I believe you may respond. Thank you, your honor. Good morning, your honors. May it please the court, Mr. Jalil. With respect to the reasonable doubt and ineffective assistance arguments, regardless of whether the defendant's defense at trial was presented under principles of proximate and intervening causes, or as it was a claim of self-defense based on surrender or abandonment, the success of either of those theories was wholly dependent on establishing that the defendant completely and overtly withdrew from the commission of the burglary, such that Mr. Brown's actions commenced a new encounter. Either way, under either theory, it came down to that, and that was the contested issue at trial. Trial court recognized the applicable law, applied it. Defendant says the trial court reached a wrong conclusion, but if you consider the evidence as a whole, the state clearly established that no surrender occurred, and relatedly, for the purposes of the felony murder rule, the burglary was not complete until the defendant returned to his grandfather's house, which was his place of safety. Trial court rightfully concluded that a feigned surrender occurred. Trial court agreed with the state's arguments that the defendant's version of events was fabricated, was inconsistent with the medical evidence, the audio of the gunshots that were fired, the efforts that the defendant took after the crime to conceal what he had done. Logan's account, the 15-year-old juvenile participated, is inconsistent with his testimony. As Justice Welch and Justice Cates both alluded, if you're going to surrender in that situation, it's just completely unnatural to not, to hold it there, and it was a feigned surrender. You drop it on the deck, kick it across the floor, whatever, and you surrender. That's a surrender. This was a trap. The counsel did argue, second degree, which was a trap. The defense did argue, second degree, legally unavailable, and although it was a bench trial, he could still hope for some remuneration given his age. He emphasized his age. He claimed he just never shot a gun before, didn't know what he was doing. Isn't that something for sentencing if he was convicted? Yes, sir, and they made the same arguments at sentencing. Defendant claimed he was I should need to save that for sentencing and argued something that was available. Well, he did argue the available self-defense. He just argued second degree at most. At most, it was second degree. Gannis, People v. Gannis, which we cite, recognizes that if you truly don't have a defense under the situation, a man that is drowning will grasp at a straw that comes floating by, and these are the situations that's recognized in. I could not find a published decision that said bench trial, jury trial, same principle applies. The same principle I would think would apply or would give an advantage to seek a bench trial in certain situations, but I want to touch on one thing that he said is that Mr. Brown's use of force was unjustifiable and unreasonable. It was neither. He had reason to believe that a forcible felony was being committed under 720 ILCS 5-7-1A. You can use deadly force if you reason to believe you're preventing the commission of a forcible felony, and even if he was in the wrong, the application of the felony murder doctrine does not depend on the victim's guilt or innocence. So I'd like to get that out of the way. The Illinois State Police, I will just say this, Illinois State Police did a really good job investigating this crime. The prosecutors took it very seriously. Defense counsel was aware of the law of self-defense, and I would ask that you affirm the defendant's convictions, conviction and sentence, if there are any questions. Justice Cates, any further questions? No questions. Justice Welch? Appellate? Rebuttal? Thank you, Your Honor. In regards to the state's statement that this was a trap and a feign giving up, for that to be true, Jerome would have had to known that, one, Logan would have complied to Jerome telling him, we're caught, come on out, that Mr. Brown was going to turn his attention towards Logan, that Blayton would use that opportunity to run, and that Mr. Brown would then discharge his weapon. And the fact that he didn't drop his gun, I mean, we are dealing with a juvenile. We're dealing with a situation where they think they're being caught by the police. All of a sudden, the door slams open. It slams open so loud that it causes a neighbor to awaken. The lights turn on, they hear a gun cocking, and then they see a gun pointed at him. Sure, in hindsight, should he have dropped the weapon and kicked it? Absolutely. But he did it, and it wasn't because he was feigning and trying to get the upper hand on Mr. Brown. It was it was just him doing a natural reaction. And in regards to Mr. Brown's actions of using deadly force, it wasn't to prevent a forcible felony. The forcible felony was over when Logan testifies that we're caught, that they give up, they're on their knees with their hands in the air. At that point, they had given up. The felony was over, and Mr. Brown shot at Blayton to prevent him from escaping. The testimony was that Mr. Brown shot at Blayton's back, that Blayton was running away from him. And then as far as the state goes, it's not about the guilt or innocence of Mr. Brown. I agree with that. But the issue is not whether Mr. Brown is guilty or whether his actions were reasonable and whether there were a reasonable reaction. And Mr. Schmitt's position is that him using deadly force to prevent Blayton from escaping wasn't reasonable, that if the situation was different and that Blayton was shot and killed and Jerome never was. Was Blayton still armed when he was running away? Or did he already jump the gun? I thought he was still armed. Blayton never had a weapon. There was only one weapon between the three. And they were handing it back and forth between them while they were rummaging through their garage. But there was only one gun. And at the time that Mr. Brown entered, the gun was in Jerome's possession. So Blayton's running away and Mr. Brown shoots at his back. So if the situation was where he successfully shoots him and kills him and Jerome never discharges his weapon, it's still tucked under his armpit the whole time, certainly Mr. Brown is facing liability here. You're not allowed to shoot somebody that's running away into their back. And that's the reason why his actions are unjustified and why they're unreasonable. And they're an intervening cause that changed the scope of the entire situation and of what was transpiring in this garage. If Mr. Brown doesn't discharge his weapon, Jerome is not firing his weapon and he sits there. Eventually the police are called. At this point, as we argued, the police are never called. They're not called by Mr. Brown. They're not called by his wife. Mr. Brown doesn't have a cell phone. So presumably at some point the police are going to be called. They're going to arrive and they're going to arrest Logan and Jerome. And as the state alluded to, these are good police officers. It's going to take them about half a second to find Blayton. So it wasn't the only reason why the shots are fired is not to prevent a forcible felony, but it's to prevent Blayton from escaping. And for that reason, we respectfully ask for the we stated in our briefings and here, we respectfully ask that your honors reverses conviction for felony murder. Any further questions, Justice Cates? No, thank you. Justice Welsh? Further questions? Thank you, counsel, for your arguments. We will take this matter under advisement and issue a ruling.